IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　Plaintiff,<br><br>vs.<br><br>WAYNE REED OGDEN,<br><br>　　Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS<br><br><br><br>Case No. 2:11-CR-543 TS |

This matter is before the Court on Defendant Wayne Ogden's Motion to Suppress.[1]

I.  BACKGROUND

Defendant Wayne Ogden's Motion to Suppress was filed on December 30, 2011. At a status conference held January 23, 2012, the Government expressed concern about the validity of the Motion's underlying rationale and moved the Court to require further briefing before setting an evidentiary hearing. The Court, after considering a brief summary of the merits of the Motion to Suppress, granted the oral motion and set out a briefing schedule.[2]

---

[1] Docket No. 45.

[2] Subsequently, Co-Defendant Terry Ogden obtained new counsel. At a status conference held March 8, 2012, Terry Ogden asked for time to review the Motion to Suppress to determine

1

Brothers Wayne and Terry Ogden are accused of running a ponzi scheme between 2005 and 2006. The Ogdens allegedly used Paradigm Acceptance LLC, a company owned by Terry but controlled by Wayne, to collect approximately $29,000,000 from investors. The Ogdens paid out $23,000,000 as alleged profits, and, in the meantime, paid themselves $2,000,000.

The case against the Ogdens is allegedly based in part on Paradigm's business records, which were obtained by federal agents from investors in Paradigm. This Motion, in which Terry Ogden does not join, alleges that Defendant Wayne Ogden was kidnaped by investors in Paradigm, that these investors had been encouraged by government agents in that process, and that the government obtained possession of Paradigm's business records as a result. Defendant alleges that the chain of events violated his Fifth Amendment right to due process, and therefore seeks suppression of the business records.

## II. DISCUSSION

"To be admissible, a confession must be made freely and voluntarily; it must not be extracted by threats in violation of due process or obtained by compulsion or inducement of any sort."[3] However, even "[t]he most outrageous behavior by *a private party* seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process

---

whether he would move to join. The Court granted the request and amended the briefing schedule. At the same conference, the Government volunteered to submit its opposition to the Motion to Suppress first, allowing Defendant to respond thereafter. The Government submitted its brief on March 12, 2012. On April 25, 2012, Wayne Ogden filed a memorandum in support of his Motion to Suppress. On May 11, 2012, the Government filed a reply. Terry has not joined in the Motion.

[3]*Griffin v. Strong*, 983 F.2d 1540, 1542 (10th Cir. 1993).

2

Clause."[4]  Therefore, the Court must determine to what extent the behavior Defendant focuses on here was "purely private activity."

The Tenth Circuit has held that the Fourth Amendment process for determining whether an otherwise private individual was acting as a government agent is applicable to a Fifth Amendment claim.[5]  Under the Fourth Amendment, courts determine whether a person is a government agent based on (1) "whether the government knew of and acquiesced in the intrusive conduct" and (2) "whether the party performing the search intended to assist law enforcement efforts or to further his own ends."[6]  The analysis is "made on a case-by-case basis and is guided by the totality of the circumstances."[7]

Guided by these principles, the Court finds that an evidentiary hearing is unnecessary in this matter.  Even accepting all of Defendant's contentions as true, the Court finds that the extent of the Government's alleged involvement with the one private individual—Joe Evans—alleged to have turned over the Paradigm business records to be minimal.  The Court further finds that Defendant's allegations demonstrate that Evans was acting to further his own ends and not to assist law enforcement.

The FBI states that the records Defendant seeks to suppress were turned over by Joe Evans, a Paradigm investor.  Defendant does not dispute that Evans was the source of the

---

[4]*Colorado v. Connelly*, 479 U.S. 157, 166 (1986).

[5]*United States v. Alexander*, 447 F.3d 1290, 1295 (10th Cir. 2006).

[6]*Id.* (internal quotation marks and citations omitted).

[7]*Id.*

records. Thus, the question before this Court is whether Evans was acting as an agent of the FBI when he obtained Paradigm's business records from Terry Ogden. Defendant alleges two potential sources of government contact that he contends were sufficient to turn Evans into a government agent—a federal probation officer and unidentified FBI officers.

According to Defendant, the facts are as follows: (1) a federal probation officer invested in Paradigm; (2) the officer encouraged Paradigm investors to recover money from Defendant by any means necessary; (3) Evans had recently been released from federal supervision under the probation officer; (4) the probation officer encouraged Evans to recover the officer's money and threatened consequences if Evans did not; (5) during the kidnaping, at which Evans is not alleged to have been present, the probation officer was contacted and advised the kidnapers that they could restrain Defendant; (6) FBI agents approved of the kidnaping and encouraged the kidnapers to get money and documents, among other things, from Defendant; (7) Defendant had his father sign over some property to one of the kidnapers; (8) Defendant, Terry, and other members of the Ogden family were subsequently harassed; (9) the harassers were primarily Joe Evans and Chris Madsen (another Paradigm investor), who Defendant alleges were partners with some of the kidnapers, but neither is alleged to have been present at the kidnaping; (10) Evans and Madsen subsequently invested more money in Paradigm in exchange for control of the business; (11) the probation officer was paid hush money to keep Evans and Madsen out of trouble while they were harassing the Ogdens; (12) after Defendant was arrested for a parole violation, Evans and Madsen obtained Paradigm's business records and attempted to recoup some of their investment; (13) Evans and Madsen eventually realized they would not be able to recoup any money; (14)

nearly a year later, Evans turned over some of his files to the FBI; (15) Madsen did not turn over his files.

As to the probation officer, the Court cannot find that his alleged advice to the kidnapers has any causal link to Evan's eventual acquisition of the business records, such that the officer could be said to have encouraged or acquiesced in Evan's conduct. Evans is not alleged to have been at the kidnaping. Furthermore, even if Defendant's allegations can somehow be construed to contend that the probation officer was encouraging Evan's alleged post-kidnaping harassment of the Ogden family, by Defendant's own admission the probation officer was acting on his own behalf (to get his money back) and not as a government agent (seeking to gather information for prosecution).

Finally, even if the Court were to accept Defendant's "hush money" allegations as true, Defendant has not alleged that the probation officer accepted the money intending that Evans and Madsen would secure the records for use in the prosecution of the Ogdens. Indeed, if the probation officer had employed Evans and Madsen as agents for the government and encouraged their harassing behavior, no hush money would have been necessary. Accordingly, Defendant's hush money allegations do not support his proposition.

As to the FBI agents, the Court is similarly unable to find that their alleged contact with the kidnapers would have turned Evans into a government agent. Again, Evans is not alleged to have been present at the kidnaping. Thus, advice from FBI agents to the kidnapers during the kidnaping on how to recoup funds has no connection to Evans.

Defendant does allege that FBI agents also advised the kidnapers to get possession of documents related to Paradigm, and that Evans was a partner with one of the kidnapers. At best, then, Defendant's claim is that: (1) FBI Agents encouraged the kidnaping of Defendant; (2) Defendant was rattled by the kidnaping, as was Terry; (3) the kidnapers subsequently harassed and threatened Defendant and Terry; (4) Evan's partner encouraged Evans and Madsen to take advantage of the Ogden's fear by harassing them and their family; (5) all of this weakened Terry's resistance, so that when Evans and Madsen offered to front Paradigm more cash to keep it operating, he had no choice but to comply and turn over the business records; and (6) Evans turned over some of the records to the FBI about a year later.

The connection between Evans and the FBI agents is so tenuous that the Court cannot accept that these unidentified agents acquiesced in *Evans's* conduct, even if they did acquiesce in the kidnapers' plan. Furthermore, the fact that Evans retained the records for nearly a year before handing them over indicates that Evans was acting for his own purposes and that the FBI became merely an incidental beneficiary after his plan was frustrated.

Given this, the Court cannot—even accepting Defendant's facts as true—find that there was an agency relationship between the Government and Evans that would serve as a basis for finding government action in the alleged Fifth Amendment violation. Accordingly, the Court will deny the Motion to Suppress.

## III. CONCLUSION

It is therefore

ORDERED that Defendant Wayne Ogden's Motion to Suppress (Docket No. 45) is DENIED.

The Court will exclude Speedy Trial time from the filing of the Motion to Suppress to the date of this Order under 18 U.S.C. § 3161(h)(1)(D), (H).

DATED   May 23, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge